UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

CASE NO.

STEVE LEVINE, individually and on
behalf of all others similarly situated,

    Plaintiff,

v.

MUNICIPAL PARKING SERVICES, INC.,

    Defendant.
_____/

## CLASS ACTION COMPLAINT

Plaintiff, Steve Levine ("Plaintiff"), individually and on behalf of all others similarly situated, sues Defendant Municipal Parking Services, Inc. ("MPS" or "Defendant") for violations of the Driver's Privacy Protection Act, 18 U.S.C. §§ 2721-2725 ("DPPA"), and alleges as follows upon personal knowledge as to Plaintiff and Plaintiff's own acts and experiences and, as to all other matters, upon information and belief, including investigation by counsel:

### NATURE OF ACTION

For decades, private parking lots operated with gated entry and exit systems that required drivers to pay before leaving the lot. Those systems were costly to install and maintain, but they followed a simple, lawful framework: payment occurred on site, and no one needed to know who the vehicle owner was.

To reduce costs and streamline operations, many private parking operators have

since turned to automated license plate recognition camera systems provided by technology vendors like MPS. These systems enable operators to eliminate gates altogether. Instead of requiring payment before exit, the cameras automatically record license plates as vehicles enter and leave. MPS or its partners then determine whether a "parking fee" is allegedly owed and seek to invoice the vehicle owner after the fact.

This shift created a new problem: with no gate and no on-site payment, operators had no way to contact vehicle owners to collect after-the-fact invoices. MPS's chosen solution was to obtain the owners' names and home addresses directly from state motor-vehicle records—personal information that is protected by the DPPA. Using that information, MPS or its partners then mail private "parking invoices" to consumers' homes, often demanding fees of $50 to $100 or more for short parking sessions, which far exceed the posted parking rate.

By doing so, MPS transformed a cost-saving measure into a business model built on the unlawful obtainment, disclosure, and use of drivers' personal information. The DPPA was enacted to prevent misuse of personal information obtained from motor vehicle records for such non-permitted purposes. Plaintiff and the proposed Class bring this action to stop MPS's unlawful practices, recover statutory damages, and protect the privacy rights Congress guaranteed under federal law.

## PRELIMINARY STATEMENT

1. This is a putative class action seeking statutory damages, declaratory relief, and permanent injunctive relief against Defendant for violations of the DPPA by knowingly obtaining, disclosing, and/or using personal information from a motor

vehicle record for a purpose not permitted.

2. Defendant is a parking-technology provider whose automated license plate recognition ("ALPR") systems and enforcement software are used by Defendant and private parking operators to manage parking compliance and to generate notices resembling parking tickets. Defendant operates nationwide.

3. In violation of the DPPA, Defendant knowingly and without consent obtained or caused to be obtained Plaintiff's and the Class Members' personal information, including their names and home addresses, from a "motor vehicle record" within the meaning of 18 U.S.C. § 2725(1) (including state motor-vehicle registration records) by matching license plates captured by ALPR cameras to state Department of Motor Vehicles ("DMV") records, and then disclosed and/or used that information to mail, or to have mailed, private parking invoices and related communications to Plaintiff's and the Class Members' homes for purposes not permitted by 18 U.S.C. § 2721(b).

4. Defendant's DPPA violations caused Plaintiff and the Class Members concrete harm, including but not limited to a statutory invasion of privacy, unwanted intrusion into the home via mailed demands, loss of control over sensitive DMV-sourced data, and time and effort spent reviewing the mailing, researching Defendant and its parking-operator partner, identifying how the data was obtained, and gathering and preserving records, as well as emotional distress.

5. Plaintiff seeks, on behalf of himself and each member of the proposed Class, statutory damages under the DPPA in the amount of at least $2,500 per

violation, reasonable attorneys' fees and costs, and such other relief as the Court determines appropriate, including a permanent injunction pursuant to 18 U.S.C. § 2724(b)(4) prohibiting Defendant from obtaining, disclosing, or using personal information from any motor vehicle record for any non-permitted purpose and requiring Defendant to identify and delete all such information in its possession, custody, or control, and to request deletion by any downstream recipients.

## PARTIES

6. Plaintiff resides in Pinellas County, Florida.

7. Defendant is a corporation organized under the laws of Minnesota with its principal place of business in Austin, Texas.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2)(A), because: (i) the proposed Class consists of 100 or more members; (ii) at least one class member is a citizen of a state different than the Defendant; and (iii) the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs. This Court also has federal question subject matter jurisdiction pursuant to 28 U.S.C. § 1331, as this action arises under the DPPA.

9. This Court has personal jurisdiction over Defendant because Defendant conducts substantial, and not isolated business in Florida, including within this District, and the wrongful conduct giving rise to this case was directed from the Defendant into this District.

10. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in Pinellas County, Florida, including the use of the ALPR technology to capture Plaintiff's license plate, the obtainment, disclosure, and/or use of personal information, and Plaintiff's receipt of the mailing.

11. All conditions precedent to the institution and maintenance of this action have been performed, excused, waived, or have otherwise occurred.

## THE DPPA

12. The DPPA was enacted in 1994 to protect the privacy of licensed drivers and to limit misuse of personal information contained in motor vehicle records. The DPPA establishes a narrow list of enumerated permissible uses and imposes civil liability for knowingly obtaining, disclosing, or using such information for a purpose not permitted under the DPPA. *See generally* 18 U.S.C. §§ 2721-2725.

13. Specifically, the DPPA provides: "[a] person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter shall be liable to the individual to whom the information pertains." 18 U.S.C. § 2724(a).

14. "Personal information" under the DPPA "means information that identifies an individual, including an individual's photograph, social security number, driver identification number, name, address (but not the 5-digit zip code), telephone number, and medical or disability information, but does not include information on vehicular accidents, driving violations, and driver's status." 18 U.S.C. § 2725(3).

15. "Motor vehicle record" is defined to include "any record that pertains to a motor vehicle operator's permit, motor vehicle title, motor vehicle registration, or identification card issued by a department of motor vehicles[.]" 18 U.S.C. § 2725(1).

16. The DPPA provides only a narrow set of permissible uses of personal information, enumerated in 18 U.S.C. § 2721(b). The DPPA also restricts resale and redisclosure of personal information. 18 U.S.C. § 2721(c).

17. The DPPA authorizes actual damages, liquidated damages of at least $2,500 per violation, punitive damages for willful or reckless disregard of the law, an award of reasonable attorneys' fees and other litigation costs, as well as equitable relief. 18 U.S.C. § 2724(b)(1)-(4).

## FACTS

18. Defendant provides ALPR systems, enforcement software, and related services used by municipalities and private parking operators in Florida and throughout the United States.

19. Defendant deploys ALPR technology that captures vehicle license plates as they enter and exit partner-operated lots.

20. When Defendant (or its systems) determines that a parking charge is contended to be due, Defendant obtains, or causes to be obtained, the vehicle owner's name and home address from a motor vehicle record for the non-permitted purpose of facilitating private, after-the-fact invoicing, and discloses or uses that information to cause a private parking invoice to be mailed, either by Defendant, by a partner parking operator, or by the operator's mailing vendor.

21. On or about October 7, 2025, Plaintiff's daughter drove and parked Plaintiff's vehicle at a private parking lot equipped with ALPR technology provided by MPS in Redington Shores, Florida. Defendant's ALPR systems at that lot captured the vehicle's license plate and recorded entry and exit times.

22. A few days later, using Plaintiff's license plate, Defendant—directly or through agents or resellers with access to such records—obtained Plaintiff's personal information, including name and home address, from a motor vehicle record and used or disclosed that information to the private parking lot's operator or its mailing vendor, and the private parking lot operator mailed a private parking invoice to Plaintiff's residence demanding payment of $75.00.

23. The invoice included photos of Plaintiff's vehicle's license plate captured by Defendant's ALPR cameras.

24. Plaintiff never provided his name or home address to Defendant or the private parking lot operator in connection with this parking event.

25. Plaintiff never authorized Defendant to obtain, disclose, or use his personal information from any motor vehicle record.

26. Defendant knowingly obtained, disclosed, and/or used Plaintiff's personal information from a motor vehicle record without Plaintiff's authorization or consent.

27. Defendant's obtainment, disclosure, and/or use of Plaintiff's personal information for mailing an invoice was not a permitted use under 18 U.S.C. § 2721(b).

28. Upon information and belief, Defendant regularly captures license plates with ALPR technology and then obtains, or causes to be obtained, personal information from motor vehicle records, which Defendant uses or discloses to generate and mail, or to have mailed, private parking invoices or notices, without a permissible purpose under the DPPA, throughout the United States.

29. Defendant's conduct and DPPA violations caused Plaintiff and the Class Members concrete harm, including a statutory invasion of privacy, unwanted intrusion into the home via mailed demands, loss of control over sensitive personal information, and time and effort spent investigating and reviewing the mailing, researching Defendant and its operator partner, identifying how the data was obtained, gathering and preserving records, and emotional distress.

30. Plaintiff resides in Pinellas County, regularly returns to the Redington Shores area for recreational purposes, and intends to continue doing so.

31. Private parking lot operators that do business with Defendant, including the operator referenced above, operate multiple lots in the area and continue to use Defendant's ALPR systems and technology.

32. Upon information and belief, Defendant retains Plaintiff's license plate and personal information (including his name and home address) in its enforcement databases and makes that information available for continued use or disclosure.

33. As a result, Plaintiff faces a real and immediate risk of being subjected again to the same unlawful obtainment, disclosure, and/or use of his personal

information when his vehicle is parked in lots using Defendant's ALPR systems and technology, and from Defendant's ongoing retention of his personal information.

## CLASS ALLEGATIONS

### Proposed Class

34. Plaintiff brings this action on behalf of himself and all others similarly situated pursuant to Federal Rule of Civil Procedure 23. The Class that Plaintiff seeks to represent is defined as:

> **All persons in the United States whose personal information contained in a motor vehicle record was obtained, disclosed, and/or used by MPS, for purposes not permitted under the DPPA, during the four-year period prior to the filing of this lawsuit through the final disposition of this lawsuit**.

Excluded from the Class are Defendant's officers, directors, affiliates, legal representatives, and employees, any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

### Numerosity

35. The Class consists of hundreds, if not thousands of members, and certainly more than 40, given Defendant's standardized practice of performing DMV lookups and mailing private parking invoices at scale nationwide. Defendant's own materials describe ALPR technology deployments "in cities across North America." Thus, joinder of all members is impracticable.

36. Class Members can be identified through objective evidence, including Defendant's ALPR match logs, motor vehicle record access logs, mailing-vendor

address files, and data from Defendant's violations payment/appeals systems, as well as customer-service and appeals databases. These sources provide common, centralized proof suitable for class-wide identification.

### Commonality/Predominance

37. There are numerous questions of law and fact common to the Class that predominate over any questions affecting only individual members. Among them are:

   a. whether Defendant knowingly obtained, disclosed, and/or used Plaintiff's and the Class Members' personal information from a motor vehicle record;

   b. whether any permissible use under 18 U.S.C. § 2721(b) applies to Defendant's conduct;

   c. whether Defendant is liable for damages under 18 U.S.C. § 2724(b) and, if so, the amount of such damages; and

   d. whether Defendant has acted or refused to act on grounds that apply generally to the Class such that injunctive relief is appropriate respecting the Class as a whole.

38. The common questions in this case are capable of having common answers, are provable with common evidence, and Plaintiff and the Class Members will have identical claims capable of being efficiently adjudicated and administered in this case.

### Typicality

39. Plaintiff's claims are typical of the Class because they arise from the same factual and legal theories: Defendant captured a license plate with ALPR technology, obtained the registrant's name and home address from a motor vehicle record, and disclosed or used that information to mail, or cause to be mailed, a private parking invoice.

### Adequacy of Representation

40. Plaintiff is a representative who will fully and adequately assert and protect the interests of the Class and has retained competent counsel. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

### Superiority

41. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy under Federal Rule of Civil Procedure 23(b)(3) because:

   a. Joinder of all Class Members would create extreme hardship and inconvenience for the affected Class Members as they reside nationwide and throughout the state;

   b. Individual claims by Class Members are impracticable because the costs to pursue individual claims exceed the value of what any one Class Member has at stake. As a result, individual Class Members have no interest in prosecuting and controlling separate actions;

    c. The interests of justice will be well served by resolving the common disputes of potential Class Members in one forum;

    d. Individual suits would not be cost effective or economically maintainable as individual actions;

    e. The requested injunctive relief is indivisible and will provide uniform relief by prohibiting Defendant from obtaining, disclosing, or using personal information from a motor vehicle record absent a permissible purpose, and by requiring the purge of such personal information stored in Defendant's records; and

    f. The action is manageable as a class action.

## COUNT I
## Violation of Driver's Privacy Protection Act, 18 U.S.C. §§ 2721-2725
## On Behalf of Plaintiff and the Class

42. Plaintiff re-alleges and incorporates the allegations set forth in paragraphs 1 through 41 as if fully set forth herein.

43. Under the DPPA, "[a] person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter shall be liable to the individual to whom the information pertains, who may bring a civil action in a United States district court." 18 U.S.C. § 2724(a).

44. "Personal information" under the DPPA "means information that identifies an individual, including an individual's photograph, social security number, driver identification number, name, address (but not the 5-digit zip code), telephone

number, and medical or disability information, but does not include information on vehicular accidents, driving violations, and driver's status." 18 U.S.C. § 2725(3).

45. "Motor vehicle record" is defined to include "any record that pertains to a motor vehicle operator's permit, motor vehicle title, motor vehicle registration, or identification card issued by a department of motor vehicles[.]" 18 U.S.C. § 2725(1).

46. Plaintiff and the Class Members are "persons" as defined by 18 U.S.C. § 2725(2) and are "individual[s] to whom the information pertains" within the meaning of 18 U.S.C. § 2724(a).

47. Plaintiff's and the Class Members' names and addresses are "personal information" under the DPPA.

48. Defendant knowingly obtained, disclosed, and/or used Plaintiff's and the Class Members' personal information from motor vehicle records, directly or through agents or resellers with access to such records, without consent or authorization.

49. Defendant violated the DPPA by knowingly obtaining, disclosing, and/or using Plaintiff's and the Class Members' personal information from motor vehicle records for a purpose not permitted under the DPPA, including cross-referencing license plates to obtain the registrant's personal information, including names and addresses, and mailing, or causing to be mailed, private parking invoices or notices to Plaintiff's and the Class Members' homes.

50. No permissible use under 18 U.S.C. § 2721(b) applies to Defendant's conduct, and Plaintiff and the Class Members did not provide consent. Defendant's conduct was not for use by a government agency, not related to motor-vehicle safety

or recall, not in connection with service of process in a proceeding, not for insurance underwriting or claims, not for fraud prevention, and not for any other enumerated purpose.

51. Defendant's DPPA violations caused Plaintiff and the Class Members concrete harm, including a statutory invasion of privacy, unwanted intrusion into the home via mailed demands, harassment, loss of control over sensitive personal information, time and effort spent reviewing the mailing, researching Defendant and its operator partner, identifying how the data was obtained, and gathering and preserving records—time that would not have been incurred but for Defendant's conduct—as well as emotional distress.

52. Plaintiff faces a real and immediate threat of repeated injury. As alleged above, Plaintiff's vehicle regularly returns to the same area where there are lots equipped with Defendant's ALPR systems and technology and Defendant retains Plaintiff's personal information in its systems for further disclosure or use.

53. Defendant maintains an ongoing policy and practice of obtaining, disclosing, and/or using personal information from motor vehicle records to mail, or cause to be mailed, private parking invoices, and Defendant retains Plaintiff's personal information in its records for further use or disclosure.

54. Monetary relief alone cannot prevent future obtainment, disclosure, redisclosure, or use of Plaintiff's personal information or require deletion of data already in Defendant's systems and records.

55. Pursuant to the DPPA, Plaintiff and the Class Members seek: (i) a declaratory judgment that Defendant's conduct violates the DPPA; (ii) permanent injunctive relief under 18 U.S.C. § 2724(b)(4) prohibiting Defendant from obtaining, disclosing, or using personal information from a motor vehicle record for non-permitted purposes, requiring identification and deletion of Plaintiff's and the Class's previously obtained personal information, and requiring notice to and deletion by Defendant's agents, partners, and any other individual or entity to whom Defendant disclosed such personal information; (iii) actual and statutory damages of at least $2,500 for each violation of the DPPA pursuant to 18 U.S.C. § 2724(b); and (iv) reasonable attorneys' fees and costs and other litigation expenses.

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, respectfully requests the following relief:

a. An order certifying this case as a class action on behalf of the Class as defined above, appointing Plaintiff as Class Representative, and appointing Plaintiff's counsel as Class Counsel;

b. An order declaring that Defendant's conduct violates the DPPA;

c. An award of actual and statutory damages of at least $2,500 for each violation of the DPPA for Plaintiff and each member of the Class, pursuant to 18 U.S.C. § 2724(b)(1);

d. An injunction permanently enjoining Defendant, and those in active concert with it:

    (i)    from obtaining, disclosing, or using personal information from a motor vehicle record for the purpose of mailing private parking invoices or related communications, or for any other purpose not permitted under 18 U.S.C. § 2721(b);

    (ii)    requiring the identification and deletion of all personal information obtained, directly or through an agent, reseller, or other third party, from a motor vehicle record relating to Plaintiff and the Class for non-permitted purposes; and

    (iii)    requiring Defendant to notify and request that all partner operators, mailing vendors, and all other recipients of such personal information to delete it and to certify deletion to the Court within a reasonable time period.

    e.    An award of reasonable attorney's fees and costs, pursuant to 18 U.S.C. § 2724(b)(3);

    f.    An award of pre-judgment and post-judgment interest as allowed by law; and

    g.    Such further and other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, individually and on behalf of the Class, demands a trial by jury on all issues so triable.

-17-

Dated: October 27, 2025

Respectfully submitted,

**MARK FERRER & HAYDEN**
80 S.W. 8th Street, Suite 1999
Miami, Florida 33130
Tel: (305) 374-0440

By: *s/Charles M. Garabedian*
Charles M. Garabedian, Esq.
Florida Bar No. 1000974
Victor Sanabria, Esq.
Florida Bar No. 125292
victor@mfh.law
charles@mfh.law
eservice@mfh.law

## **CERTIFICATE OF SERVICE**

I hereby certify that I filed the foregoing document electronically on the Court's CM/ECF docket on October 27, 2025, which served same electronically upon all counsel of record.

By: *s/ Charles M. Garabedian*