**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**(TAMPA DIVISION)**

| | |
|---|---|
| STEVE LEVINE and JAQUELYN DEPPE, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>MUNICIPAL PARKING SERVICES, INC., PREMIUM PARKING SERVICE, LLC, and GOVCIO, LLC,<br><br>Defendants. | No. 8:25-CV-2920-KKM-NHA |

**DEFENDANT GOVCIO, LLC'S MOTION TO DISMISS COUNT III OF THE AMENDED CLASS ACTION COMPLAINT AND INCORPORATED MEMORANDUM OF LAW**

Defendant GovCIO, LLC ("GovCIO"), pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), moves to dismiss Count III of the Amended Complaint with prejudice.

Plaintiffs' claim fails as a matter of law and should be dismissed because:

(1) Plaintiffs lack Article III standing because the alleged injuries are not fairly traceable to GovCIO, and even if they were, Plaintiffs have not sufficiently alleged a concrete injury; and

(2) Plaintiffs fail to state a claim because GovCIO's alleged conduct constitutes a permissible use under 18 U.S.C. § 2721(b)(4).

## INTRODUCTION

Plaintiffs' Amended Complaint brings a single count against GovCIO under the Driver's Privacy Protection Act, 18 U.S.C. §§ 2721–2725 ("DPPA"). This claim fails at the threshold for two independent reasons.

***First***, Plaintiffs lack Article III standing. The series of alleged events are as follows: (1) Plaintiffs' vehicles entered and exited private parking lots without paying; (2) those parking lots were equipped with auto-license plate reader ("ALPR") technology; (3) that technology was used to find names and addresses associated with the license plates; and (4) Plaintiffs received invoices for unpaid parking fees. That is all. Even accepting this sequence at face value, ***none*** of Plaintiffs' purported harms, even if cognizable (which they are not), are fairly traceable to GovCIO, which is alleged only to have performed a backend data lookup—not to have generated, mailed, or drafted any invoice, captured Plaintiffs' license plate numbers, selected any amount due, or

threatened any consequence. Plaintiffs likewise struggle to spell out how, exactly, their alleged injuries would satisfy Article III's "concrete and particularized" and "actual or imminent" requirements. The only purported tangible consequence Plaintiffs allege is the time spent reviewing the invoices, considering how their information had been obtained, and deciding how to respond. They do not allege that they disputed the invoices, paid them, suffered harm to their credit, or had a vehicle booted or towed—*i.e.*, nothing beyond reading their mail and thinking about it. That is not an injury in fact. And Plaintiffs' alleged intangible "privacy injuries" are widely held to be insufficient, particularly where the purported "invasion" was a mere letter delivered to a mailbox.

***Second***, Plaintiffs' allegations describe a use of data the DPPA expressly permits. Plaintiffs allege that a captured license plate number was used to identify a registered owner, obtain contact information, and pursue an asserted unpaid parking fee—precisely the kind of pre-suit identification that falls within the DPPA's litigation-related permissible use, 18 U.S.C. § 2721(b)(4).

For these reasons, Count III should be dismissed.

## BACKGROUND

### A. Relevant Complaint Allegations.

Plaintiffs allege that Premium operates private parking enforcement programs at parking lots throughout Florida and other states and that MPS

provides Premium with ALPR-based enforcement and collection services. Am. Compl. ¶¶11, 25–26. When vehicles enter a private parking lot equipped with MPS's technology, Plaintiffs allege cameras capture images of the vehicle, including the license plate. *Id.* If MPS's ALPR system determines that a parking charge is owed, Plaintiffs allege MPS sends the images to third-party vendors to match the vehicle owner's name and home address so MPS and Premium can send an invoice to the owner. *Id.* ¶¶29–31.

Plaintiffs allege GovCIO is a vendor that "provides or supports" private parking operators' enforcement technology and workflow by "obtain[ing]" and "transmitting" the information used to "generate and mail the parking invoices." *Id.* ¶¶12, 36–37, 66, 103. Plaintiffs do not allege that GovCIO prepares or mails the invoices. Instead, Plaintiffs allege that once a vehicle is flagged for a parking charge and the owner identified, Premium and MPS issue the invoice to the owner's registered address. *Id.* ¶¶30–31. Plaintiffs further allege the invoices state: "IF PAYMENT IS NOT RECEIVED BY FINAL DUE DATE, VEHICLE IS SUBJECT TO BOOTING/TOWING." *Id.*

Plaintiff Levine alleges his daughter parked his vehicle at a Premium-managed lot in Redington Shores, Florida, equipped with MPS's camera system, and that Premium and MPS later mailed an invoice to Levine's home address. *Id.* ¶¶2, 39–47. Plaintiff Deppe alleges she entered the same lot in Redington Shores twice but never parked, and Premium later mailed her an

invoice claiming her vehicle had been parked for nearly four hours. *Id.* ¶¶3, 48–57. Notably, unlike Levine, Deppe does not allege that the invoice was mailed to her home address. Instead, the Amended Complaint is conspicuously silent with respect to where Deppe's invoice was mailed. Although Deppe claims to reside in Florida, she concedes her vehicle has a Georgia license plate and that her personal information was purportedly obtained from the Georgia Department of Driver Services. *Id.* ¶¶9, 56. Neither Plaintiff alleges that they disputed the parking charge with MPS or Premium or that they paid the invoice. *Id.* ¶¶39–57.

Plaintiffs allege that "Defendants"—collectively—violated the DPPA by "obtain[ing], us[ing], and disclos[ing] [their] DMV-sourced personal information to identify the registered owner of a vehicle, locate that person's home address, generate and mail a private parking charge notice, and collect or attempt to collect a private parking charge." *Id.* ¶70.

**B. Overview of DPPA.**

The DPPA is, at its core, a violent crime prevention statute. Congress enacted the DPPA in 1994 as part of the larger Violent Crime Control and Law Enforcement Act to protect DMV-obtained information. *See Margan v. Niles*, 250 F. Supp. 2d 63, 68 (N.D.N.Y. 2003). The statute was enacted to address the "growing threat from stalkers and criminals who could acquire personal information from state DMVs." *Maracich v. Spears*, 570 U.S. 48, 57 (2013).

Critically, the DPPA was "not intend[ed] to suppress legitimate business uses of motor vehicle records." *Taylor v. Acxiom Corp.*, 612 F.3d 325, 336 (5th Cir. 2010). Congress accordingly identified fourteen permissible uses of "personal information" under the statute. *Id.* at 333–36; *see* 18 U.S.C. § 2721(b)(1)-(14). At the time enacted in 1994, "[c]areful consideration was given to the common uses now made of this information and great efforts were made to ensure that those uses were allowed under this bill." *Id.* (citation modified). As relevant here, these permitted uses include "background research to determine whether there is a supportable theory for a complaint," among others. *Maracich,* 570 U.S. at 49.

## LEGAL STANDARD

Rule 12(b)(1) permits dismissal for lack of subject-matter jurisdiction, including where a plaintiff fails to plausibly allege Article III standing. Fed. R. Civ. P. 12(b)(1). Under Rule 12(b)(1), "a plaintiff must allege facts that, taken as true, plausibly state that the elements of standing are met." *Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*, 48 F.4th 1236, 1241 (11th Cir. 2022) (citation modified).

Under Rule 12(b)(6), a complaint must allege facts that, accepted as true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation modified). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged." *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). Plaintiffs must plead more than conclusory allegations or bare legal conclusions. *Id.* at 680–81.

## ARGUMENT

### I. PLAINTIFFS LACK ARTICLE III STANDING.

To satisfy Article III standing at the pleading stage, Plaintiffs must "clearly and specifically" allege that they "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016); *Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 924–25 (11th Cir. 2020) (en banc). "Bare statutory violation[s]" are insufficient to confer standing. *Hunstein*, 48 F.4th at 1242 (citation modified).

Plaintiffs' claim against GovCIO fails at the threshold because their purported injuries are neither traceable to GovCIO nor are they sufficiently concrete to confer Article III standing.

#### A. Plaintiffs' Allegations Are Not Traceable to GovCIO.

Article III demands a "causal connection between the injury and the conduct complained of—the injury must be 'fairly . . . trace[able] to the challenged action of the defendant.'" *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (citation modified). "[S]tanding is not dispensed in gross": plaintiffs must plausibly allege standing as to *each* claim against *each* defendant.

*TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021); *Murthy v. Missouri*, 603 U.S. 43, 61 (2024). Plaintiffs have not done so here.

Instead, Plaintiffs rely on impermissible group pleadings and conclusory allegations to try to trace their injuries to GovCIO. Although traceability is "less stringent than proximate cause," a plaintiff must still allege a "plausible causal chain" linking each defendant's conduct to the specific injury alleged. *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1271–72 (11th Cir. 2019). Here, every purported harm Plaintiffs allege traces, at most, to Premium and MPS—not GovCIO. Plaintiff Levine alleges that Premium and MPS "mailed or caused a private parking notice to be mailed" to his home, that the notice demanded payment to Premium or MPS, and that he spent time investigating who Premium and MPS were and how they obtained his information. Am. Compl. ¶¶14–15, 43–47. Plaintiff Deppe alleges that Premium mailed her an invoice (to an undisclosed address that she does not allege was her home address) demanding payment to Premium or MPS, and that she spent time investigating who they were and how Premium or MPS obtained her information. *Id.* ¶¶53–57. GovCIO, by contrast, is alleged only to "provide[] or support[]" a lookup function, process or store data, and transmit information within a workflow. *Id.* ¶¶12, 36–38, 66–68. Nowhere do Plaintiffs allege that GovCIO was involved in determining who should receive demand letters,

drafting or mailing the notices, selecting amounts due, choosing payment methods, or including the booting and towing language.

The Eleventh Circuit has made clear that this type of attenuated connection is insufficient. In *Walters v. Fast AC, LLC*, 60 F.4th 642 (11th Cir. 2023), the plaintiff sued both: (1) Fast AC, a contractor who allegedly concealed loan documents, and (2) FTL Capital Partners, a lender who allegedly failed to provide disclosures required in the loan documents by the Truth In Lending Act ("TILA"). The Eleventh Circuit held that the plaintiff's injuries—wasted time disputing the debt, credit damage, money spent faxing documents, and emotional distress—could not be traced to FTL's alleged TILA violation because they resulted from the intervening and independent conduct of Fast AC, who prevented the plaintiff from ever seeing the loan paperwork. *Id.* at 651–53. Likewise, Plaintiffs trace their alleged injuries (if at all) only to Premium and MPS—who allegedly captured their license plate numbers, generated the parking charges, directed payment to their own channels, and threatened booting or towing—rather than to GovCIO's alleged upstream data processing. Am. Compl. ¶¶31–35, 43–45, 53–55; *see Walters*, 60 F.4th at 651; *Bojicic v. DeWine*, 569 F. Supp. 3d 669, 683 (N.D. Ohio 2021), *aff'd*, No. 21-4123, 2022 WL 3585636 (6th Cir. Aug. 22, 2022) (plaintiffs' assertions that "defendants" acted as a group are insufficient to satisfy traceability absent allegations of each defendant's involvement with challenged conduct). Simply

put, Plaintiffs do not—and cannot—trace their alleged injuries to GovCIO, the entity they allege merely performed lookup services to provide the addresses to mail the invoices. *See Baughcum v. Jackson,* 92 F.4th 1024, 1033–34 (11th Cir. 2024) (plaintiffs' injuries not fairly traceable to defendants who merely designed and furnished the allegedly improper application forms, *i.e.*, a purely intermediary role). This is particularly true for Plaintiff Deppe, who does not even allege that the address GovCIO purportedly provided was her home address. *See supra*, at 4.

*Crowder v. Andreu, Palma, Lavin & Solis, PLLC*, No. 2:19-CV-820, 2021 WL 1338767, at *8 (M.D. Fla. Apr. 9, 2021) is also instructive. There, the court held the plaintiff's purported injuries from receiving a debt collection letter were not traceable to the law firm that sent them on behalf of the owner of plaintiff's debt. The plaintiff had filed suit against the law firm under the Fair Debt Collection Practices Act because it had sent a form debt validation letter to the plaintiff. *Id.* at *1. The court dismissed the plaintiff's complaint, holding that all of plaintiff's alleged injuries, including "wasted time" spent dealing with the collection letters, were traceable to plaintiff's own conduct, not the law firms. *Id.* at *7–8. Here, the purported injuries are even less traceable to GovCIO.

Nor can Plaintiffs' improper group pleading cure this defect. Lumping "Defendants" together and asserting in conclusory fashion that Plaintiffs'

injuries are "fairly traceable to Defendants' conduct," Am. Compl. ¶93, is a mere legal conclusion and does not establish standing as to GovCIO specifically. *See Murthy*, 603 U.S. at 61; *Anderson v. Raffensperger*, 497 F. Supp. 3d 1300, 1329–30 (N.D. Ga. 2020).

Accordingly, Count III should be dismissed for Plaintiffs' failure to adequately trace their alleged injuries to GovCIO's alleged conduct.

**B. Plaintiffs Fail to Plausibly Allege an Injury in Fact.**

To plausibly allege an injury in fact, a plaintiff must demonstrate "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Spokeo*, 578 U.S. at 339 (citing *Lujan*, 504 U.S. at 560). Where, as here, claims rest on alleged statutory violations, Plaintiffs must still show they suffered a concrete injury—a statutory right of action alone is insufficient. *TransUnion*, 594 U.S. at 426 (citing *Spokeo*, 578 U.S. at 341); *Trichell v. Midland Credit Mgmt. Inc.*, 964 F.3d 990, 997 (11th Cir. 2020) ("[A] plaintiff does not 'automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.'") (quoting *Spokeo*, 578 U.S. at 341).

Concrete injuries are either tangible or intangible. *Nelson v. Experian Info. Sols. Inc.,* 144 F.4th 1350, 1353 (11th Cir. 2025). Tangible harms include physical injury, financial loss, or wasted time and money mitigating a concrete

harm. *Id.* at 1355. "Intangible harms include, among other things, 'injuries with a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts.'" *Id.* (citing *TransUnion*, 594 U.S. at 425).

Plaintiffs attempt to shoehorn their allegations into cognizable injuries by identifying three purportedly "concrete and particularized" harms: (1) time spent reviewing and investigating the invoices; (2) Defendants' alleged "obtain[ment]" of "Plaintiffs' personal information," causing a "los[s] of control over their DPPA-protected personal information"; and (3) receipt of an invoice at an address they had not provided. *See* Am. Compl. ¶¶47, 57, 85–93. None of these three alleged injuries are cognizable.

### *1. Plaintiffs fail to plausibly allege tangible harm.*

Plaintiffs do not allege that any Defendant's obtainment, disclosure, or use of their DPPA-protected information caused them any financial or physical harm. The only downstream consequence Plaintiffs identify is that they purportedly spent time reviewing the parking invoices, researching who Premium and MPS were and how they obtained their information, evaluating the booting/towing language, and deciding how to respond. *Id.* ¶¶47, 57, 92. But Plaintiffs' "time spent" allegations are insufficient to establish tangible harm for three independent reasons.

***First***, merely reviewing and evaluating parking invoices is not a tangible harm. Indeed, "[b]ecause receipt of a bill for services rendered is not an injury,

spending time examining and paying the bill is not an injury." *See Bourdeau v. Pro. Parking Mgmt. Corp.*, No. 25-60390-CIV, 2026 U.S. Dist. LEXIS 35232, at *11 (S.D. Fla. Feb. 20, 2026). This is true *even if* a plaintiff argues he or she did not actually receive the services billed. *See id.* at *9–10 (plaintiffs who alleged they "never actually parked" in the lot did not suffer a legal injury when they received an invoice in the mail). Thus, it is irrelevant that Plaintiff Levine claims his daughter—not Levine himself—parked the vehicle, or that Plaintiff Deppe alleges her invoice incorrectly billed her for four hours.

What is more, Plaintiffs do not allege they appealed their invoices. Nor do Plaintiffs allege that they paid the invoices, incurred dispute-related expenses, suffered adverse credit reporting, were referred to collections, had a vehicle booted or towed, or experienced any other concrete downstream consequence. The absence of any such allegations is fatal to any claim of tangible harm based on "time spent" reviewing the invoices. Indeed, in *In re Municipal Parking Services*, the court rejected defendants' lack of standing argument because plaintiffs alleged they spent time *disputing* the invoices or *remitting payment*—concrete acts with real-world consequences. No. 3:24-cv-320, 2025 WL 1475794, at *5 (N.D. Fla. Feb. 12, 2025). Plaintiffs here allege nothing comparable—only that they spent time *thinking* about the parking invoices they received. That distinction is dispositive. Moreover, recent Eleventh Circuit precedent confirms that the time a plaintiff spends

responding to an alleged statutory violation alone is insufficient to confer standing. *Compare Nelson*, 144 F.4th at 1355 (time and effort spent is not sufficiently concrete where it was in response to an "otherwise harmless statutory violation"), *with Terrance Hays v. Equifax Info. Serv. LLC,* No. 8:26-CV-1780-KKM-NHA, 2026 WL 2386346, at *2 (M.D. Fla. Aug. 17, 2026) (Mizelle, J.) ("[A] plaintiff must allege that the … time [spent] relates" to a concrete injury) (citing *Losch v. Nationstar Mortg. LLC*, 995 F.3d 937, 943 (11th Cir. 2021)). It is particularly difficult to conceive how "time spent" thinking about the invoices could amount to legal injury here, where Plaintiff Deppe concedes she chose to spend time giving an interview to a local news channel about it. Am. Compl. ¶57. Such self-imposed expenditures of time do not amount to cognizable legal injuries.

***Second***, wasted time and effort constitute a concrete harm only when expended in response to conduct that "is itself a concrete harm." *Nelson*, 144 F.4th at 1355 (citation modified). The Eleventh Circuit made clear that a plaintiff cannot manufacture standing through self-imposed expenditures of time or effort unless those expenditures flow from an underlying concrete injury. *Id.* at 1354–56 (no tangible injury where plaintiff failed to identify "any way" time and money spent correcting "errors" in her credit report "injured her apart from her efforts to correct them"); *Valiente v. Palm Beach Credit Adjustors, Inc.*, 817 F. Supp. 3d 1307, 1311, 1316 (S.D. Fla. 2025) (time spent

responding to collection letter for debt plaintiff did not believe he owed was not concrete harm because alleged error did not itself cause a concrete harm).

Plaintiffs' allegations fall squarely within *Nelson*. Plaintiffs do not identify any concrete way the alleged statutory violation injured them apart from their own review of the parking invoices. They do not allege that GovCIO publicly disclosed their information or that the information caused any credit, financial, or other concrete downstream consequences. Because Plaintiffs have "not established that the underlying information caused [them] harm," they cannot satisfy their burden of pleading Article III standing. *Nelson*, 144 F.4th at 1354–56[1]; *see Terrance Hays,* 2026 WL 2386346, at *2 (efforts "playing detective … do not amount to concrete and particularized harm"); *Harding v. Experian Info. Sols., Inc.*, No. 8:26-CV-2009, 2026 WL 2146992, at *2 (M.D. Fla. July 27, 2026) (Mizelle, J.) (rejecting wasted-time allegations as nothing more than "playing detective," which is insufficient to confer standing absent additional concrete harm).

***Third***, even if Plaintiffs' wasted-time theory was legally viable, their allegations are fatally conclusory—they allege no concrete amount of time spent and provide no concrete account of what they did. *See Walden-Curry v.*

[1] To hold otherwise would permit Plaintiffs to "create a loophole" in the Supreme Court's holdings in *Spokeo* and *TransUnion*, allowing any plaintiff to "bypass those holdings by spending time and money to rectify an otherwise harmless statutory violation." *Id.*

*Medicredit Inc.*, No. 25-CV-60919, 2026 WL 778089, at *5 (S.D. Fla. Jan. 23, 2026), *report and recommendation adopted*, No. 25-60919-CIV, 2026 WL 778086 (S.D. Fla. Mar. 6, 2026) (failing to allege specific amount of time and vague explanations of time spent "dealing with [] unwanted letters" insufficient to confer standing); *Heres v. Medicredit, Inc.*, No. 23-CV-24815, 2024 WL 3291738, at *7 (S.D. Fla. July 3, 2024) (conclusory allegations of wasted time when plaintiff failed to allege how much time and money was spent insufficient to confer standing).

***2. Plaintiffs fail to plausibly allege intangible harm.***

An intangible harm is concrete only when it bears a "close relationship" to a harm traditionally recognized as providing a basis for suit. *Hunstein*, 48 F.4th at 1243–44; *see also TransUnion*, 594 U.S. at 424–25. "Courts do not demand 'an exact duplicate in American history and tradition,' but neither should they 'loosen Article III based on contemporary, evolving beliefs about what kinds of suits should be heard in federal courts.'" *Klein v. Receivable Mgmt. Grp., Inc.*, 595 F. Supp. 3d 1183, 1190–91 (M.D. Fla. 2022) (Mizelle, J.) (quoting *TransUnion*, 594 U.S. at 424–25). This inquiry demands more than surface-level resemblance: "the common law analogy collapses if we can rewrite a traditional tort to exclude an essential element." *Hunstein*, 48 F.4th at 1248; *see also Drazen v. Pinto*, 74 F.4th 1336, 1343 (11th Cir. 2023) (alleged

harm fails common-law analogy when missing "an element essential to the harm set out as a common law comparator") (citation modified).

Florida courts recognize three types of privacy harm: (1) the public dissemination of truthful private information which a reasonable person would find objectionable; (2) the unauthorized use of a person's name or likeness to obtain some benefit; and (3) intrusion upon the solitude or seclusion of another. *See Jews for Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1100, 1113 (Fla. 2008). As noted above, Plaintiffs allege two theories of "privacy"-related harm: (1) "loss of control" of their DPPA-protected information, and (2) receipt of an invoice to an address they had not disclosed. Neither fits into any of the three categories of cognizable privacy harms.

***First***, Plaintiffs' vaguely-asserted "loss of control" injury is missing an essential element—chiefly, publicity—necessary to be recognized as a cognizable harm. Indeed, it is well established that the disclosure of protected information to third-party vendors, without more, is not enough. *See, e.g.*, *Hunstein*, 48 F.4th at 1245. In *Hunstein*, the Eleventh Circuit rejected a privacy injury claim for lack of concrete harm based on the sharing of a plaintiff's statutorily protected information (there, under the Fair Debt Collection Practices Act) with mail vendors because the plaintiff did not allege the "fundamental element of publicity." *Id.* Likewise, here, the bare-bones allegation that Plaintiffs "los[t] control over their DPPA-protected personal

information" because it ended up in the possession of downstream vendors is not a cognizable intangible harm.

***Second***, Plaintiffs' other alleged "privacy" harm—receiving an invoice at addresses they did not disclose—fares no better. For this purported injury, Plaintiffs' only possible common law analogue is intrusion upon seclusion, which requires an "(i) intentional intrusion (ii) into another's solitude or seclusion, (iii) which would be highly offensive to a reasonable person." *Drazen*, 74 F.4th at 1345. But Plaintiffs do not allege the essential element of an intrusion into any "private place" or "private seclusion." *See* Restatement (Second) of Torts § 652B, cmt. c (liability attaches "only when [the defendant] has intruded into a private place or has otherwise invaded a private seclusion").

For starters, motor vehicle records are not private. *See Corbitt v. Sec'y of the Ala. Law Enf't Agency*, 115 F.4th 1335, 1350–51 (11th Cir. 2024) (no reasonable expectation of privacy in motor vehicle records); *Letourneau v. City of Pembroke Pines*, No. 17-CV-60082, 2017 WL 9362841, at *5 (S.D. Fla. Apr. 4, 2017) (information in motor vehicle records is not provided in confidence so an individual cannot have a reasonable expectation of privacy therein); *Watts v. City of Hollywood*, 146 F. Supp. 3d 1254, 1267 (S.D. Fla. 2015) (accessing driver's license information in DMV system "is likewise not an intrusion into a 'place'"). Accordingly, post-*TransUnion*, courts have held that obtaining,

disclosing, and using personal information from motor vehicle records—without consent and to send invoices—is not a cognizable intangible injury. *See Cicale v. Pro. Parking Mgmt. Corp.*, 832 F. Supp. 3d 1331, 1336 (S.D. Fla. May 1, 2026) ("Cicale has no claim for intrusion of privacy based on [defendant's] access of his driving records."); *Stegmeyer v. ABM Indus. Inc.*, No. 24-CV-00394, 2026 WL 879588, at *5 (N.D. Ill. Mar. 30, 2026) (allegations of obtaining, using, and disclosing DPPA-protected information to text and mail bills do not amount to an injury in fact); *Bourdeau*, 2026 U.S. Dist. LEXIS 35232, at *12 (rejecting comparison of DPPA violation to invasion of privacy because "[a]ccessing motor vehicle records is not equivalent to an intrusion into a 'place'"); *Schmalshof v. McDonough Cnty.*, No. 3:24-CV-03071, 2025 WL 714359, at *3 (C.D. Ill. Mar. 5, 2025) (obtaining DPPA-protected information without consent is insufficient to allege injury in fact); *In re Mun. Parking Servs.*, 2025 WL 1475794, at *4 ("DMV records are not a place in which Plaintiffs had a reasonable expectation of privacy at common law.").

*Cicale* is instructive. There, a private parking operator used motor vehicle records to identify a vehicle owner and mailed a parking invoice threatening collections, booting, or towing—facts indistinguishable from this case. 832 F. Supp. 3d at 1333–35. The court dismissed for lack of standing, holding accessing motor vehicle records does not intrude into "a place in which

there is a reasonable expectation of privacy." *Id.* at 1336 (citation modified). So too here.

Moreover, it is well settled that receiving an invoice in the mail is not an "intrusion upon one's seclusion." *Id.* (rejecting plaintiff's claim of intangible harm because receiving a bill at home is "not an invasion of [plaintiff's] seclusion"). Receiving a bill in the mail is categorically different from the kind of intrusion that could confer standing—Plaintiffs have "no expectation of privacy to not receive a bill at your home." *See id.*; *see also Walden-Curry*, 2026 WL 778089, at *8 ("Plaintiff's receipt of two unwanted debt letters here does not cause a harm of the same kind as those caused by an intrusion upon seclusion at common law and thus does not confer standing"); *Valiente*, 817 F. Supp. 3d at 1318 (letters delivered to a mailbox are "an altogether different type of injury" than receiving an unwanted text message or call); *Heres*, 2024 WL 3291738, at *11–12 (unsolicited mailings not analogous to intrusion upon seclusion). The Eleventh Circuit's holding in *Drazen*—that a single unwanted *text message* sufficed for standing—underscores the deficiency here: unlike a text, which arrives on a cell phone, usually carried on one's person, and "demands the recipient's attention (at a time of the sender's, not the recipient's, choosing)," mail "arrives silently, outside the home, and is collected and reviewed at the recipient's convenience." *Walden-Curry*, 2026 WL 778089, at *7; *see also Popa v. Microsoft Corp.*, 153 F.4th 784, 791 (9th Cir. 2025)

(affirming dismissal of plaintiff's statutory violation claim for lack of standing due to failure to allege "any kind of harm that is remotely similar to the highly offensive interferences or disclosures that were actionable at common law").

This shortcoming is particularly fatal for Plaintiff Deppe,[2] as the Amended Complaint does not allege that she received the invoice at her home mailbox—or that her home address was obtained, used, or disclosed to anyone ***at all***. Instead, and unlike the allegations related to Plaintiff Levine, the Amended Complaint conspicuously alleges only that Plaintiff Deppe's invoice was mailed to some (undisclosed) address, and that the invoice bore her name. Am. Compl. ¶53; *compare id.* ¶43 ("Premium and MPS mailed a 'Parking Invoice' to Plaintiff Levine's home address in Pinellas Park, Florida.") (emphasis added). Without such an allegation, Deppe cannot plausibly claim that there was an intrusion upon her solitude or seclusion.[3]

It is immaterial that Plaintiff Levine alleges he was not driving his vehicle when the parking fee was incurred and that Plaintiff Deppe alleges she

[2] Each plaintiff must plausibly allege standing for each claim asserted against each defendant. *See Murthy*, 603 U.S. at 61; *Warth v. Seldin*, 422 U.S. 490, 502 (1975).

[3] If Plaintiff Deppe's claim is dismissed, the Georgia Premium Class should also be struck pursuant to Rules 12(f) and 23(d)(1)(D), as no named plaintiff would remain to represent that sub-class. *See Lyman v. Excel Impact, LLC*, No. 23-23767-CV, 2024 WL 982562, at *6 (S.D. Fla. Feb. 28, 2024) (striking injunctive class prior to full discovery or a motion for class certification because the named plaintiff lacked standing to represent the class); *see also O'Shea v. Littleton*, 414 U.S. 488, 494 (1974) ("Moreover, if none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class.").

did not park in the lot for the four hours charged. Courts have consistently held that even if a bill is incorrect or for amounts not properly owed, that is still not an intrusion upon seclusion. *See Pucillo v. Nat'l Credit Sys. Inc.*, 66 F. 4th 634, 640 (7th Cir. 2023) (holding that the mailing of an inaccurate collection letter to the plaintiff did not "resemble the injury associated with intrusion upon seclusion"); *Valiente*, 817 F. Supp. 3d at 1317 (plaintiff's receipt of a collection letter for amount he believed someone else owed was insufficient to confer standing).

None of Plaintiffs' alleged "privacy" harms are cognizable privacy injuries, and Plaintiffs have thus failed to demonstrate Article III standing.

## II. COUNT III SHOULD BE DISMISSED UNDER RULE 12(B)(6) BECAUSE THE CONDUCT ALLEGED WAS PERMITTED.

Even if Plaintiffs could establish standing, Count III must be dismissed because Plaintiffs fail to plead a DPPA claim against GovCIO. To state a DPPA claim, Plaintiffs must plausibly allege that GovCIO: "(1) knowingly obtained, disclosed, or used personal information, (2) from a motor vehicle record, (3) for a purpose not permitted." *Watts v. City of Miami*, 679 F. App'x 806, 808 (11th Cir. 2017) (citation modified). Plaintiffs cannot satisfy the third element because the conduct they challenge falls squarely within 18 U.S.C. § 2721(b)(4).

Plaintiffs' allegations attempting to negate these permissible uses are textbook conclusory pleading. They allege broadly that "Defendants'" use "is

not permitted under § 2721(b)," Am. Compl. ¶¶5, 61, 70, and then attempt to dispose of each subsection by reciting it and appending the word "not." *See id.* ¶¶71–79, 82–83. This is precisely the formulaic recitation of elements that cannot survive a motion to dismiss. *See Twombly*, 550 U.S. at 555, 570.

### A. GovCIO's Alleged Use Falls Within the Litigation-Related Permissible Use Under § 2721(b)(4).

Section 2721(b)(4) permits the use and disclosure of DMV records "in connection with any civil . . . proceeding," including "investigation in anticipation of litigation." This exception is "extremely broad." *Thomas v. George, Hartz, Lundeen, Fulmer, Johnstone, King and Stephens, P.A.*, No. 03-21759-CIV, 2006 WL 8431100, at *5 (S.D. Fla. Nov. 7, 2006). It authorizes use *before* the initiation of any civil proceeding, *see Young v. W. Pub. Corp.*, 724 F. Supp. 2d 1268, 1278 (S.D. Fla. 2010), with no requirement that a lawsuit ever be filed. *See Thomas v. George, Hartz, Lundeen, Fulmer, Johnstone, King and Stephens, P.A.*, 525 F.3d 1107, 1115 n.5 (11th Cir. 2008) (dismissing DPPA claim where DMV records obtained "for prospective, not-yet-filed litigation"); *Taylor*, 612 F.3d at 337 (use permitted even where information will likely never be used for that purpose); *Welch v. Jones*, 770 F. Supp. 2d 1253, 1259 (N.D. Fla. 2011) ("Had Congress intended § 2721(b) to require actual use—rather than only a purpose to use when appropriate—it could have said so.").

Plaintiffs advance three conclusory allegations to argue that GovCIO's alleged use is not permitted by § 2721(b)(4), none of which succeeds. ***First***, Plaintiffs allege that the parking invoices "threatened booting and towing" rather than litigation. Am. Compl. ¶74. But § 2721(b)(4) does not require that litigation be threatened, pending, or even likely. The Supreme Court in *Maracich* described "investigation in anticipation of litigation" as encompassing "background research to determine ***whether*** there is a supportable theory for a complaint" and "contacting persons . . . who are necessary parties" to litigation. 570 U.S. at 63–64 (emphasis added).

That is precisely what Plaintiffs allege here. Plaintiffs allege GovCIO obtains basic identifying information—names and addresses—from motor vehicle records and provides them to Premium and MPS so they can identify vehicles flagged for unpaid parking charges, send invoices, and pursue payment. Am. Compl. ¶¶27, 36–38. To determine ***whether*** further collection proceedings are necessary, Premium and MPS must first identify the registered vehicle owner—a "***necessary part[y]***" to any potential collection action. *Maracich*, 570 U.S. at 63 (emphasis added). Without accessing motor vehicle records, Premium and MPS would have no way to identify potential defendants or recover unpaid fees. Am. Compl. ¶¶6, 27–28.

Plaintiffs' allegation that "no attorney reviews" each individual lookup is equally unavailing. *Id.* ¶77. As the *Young* court recognized, the only

requirement under § 2721(b)(4) is that the personal information only be used "***in connection or anticipation with*** some type of legal proceeding." 724 F. Supp. 2d at 1278 (emphasis added).

***Second***, Plaintiffs assert that § 2721(b)(4) cannot apply because not every lookup leads to litigation. But the Eleventh Circuit rejected this argument in *Thomas*. There, defendants accumulated 284,000 driving records "for the purpose of identifying potential witnesses" but used only 1,000. 525 F.3d at 1109–10, 1114–15. The court held that an "initial review of the total amount of records is just as much tied to 'investigation in anticipation of litigation' as the eventual sending out." *Id.* at 1115; *see also Welch*, 770 F. Supp. 2d at 1259 ("[W]hen a business obtains personal information in advance for the very purpose of having the information available . . . when the need arises, the information is obtained 'for use.'"). Likewise, obtaining DMV information to identify potential defendants and send pre-suit demands is covered within § 2721(b)(4) even if no suit follows. Any contrary reading would produce the absurd result of permitting immediate litigation while forbidding less burdensome pre-suit notice.

***Third***, Plaintiffs allege the "predominant purpose" of the workflow alleged is "private billing and collection, not litigation." Am. Compl. ¶78. This does not remove the conduct from § 2721(b)(4). Here, there is no dispute that the collection process Plaintiffs allege *could* result in a civil proceeding.

Section 2721(b)(4) does not require litigation be the sole or even primary anticipated outcome—only that the use relate to that possibility. *See City of Tallahassee v. Federated Publ'ns, Inc.*, No. 4:11CV395, 2012 WL 5407280, at *2 (N.D. Fla. Aug. 9, 2012); *see also In re Mun. Parking Servs.*, 2025 WL 1475794, at *8 (requiring only "that the purpose for using the information ***relates in some way*** to pending or anticipated litigation") (emphasis added).

Because Plaintiffs' allegations describe precisely the kind of pre-suit identification, demand, and preservation-of-remedies process that falls within § 2721(b)(4), they fail to plead that GovCIO's alleged use was for a non-permissible purpose. Count III thus fails to state a claim and should be dismissed.

## CONCLUSION

For the foregoing reasons, Defendant GovCIO respectfully requests that the Court dismiss Count III with prejudice under Rule 12(b)(1) for lack of Article III standing or, alternatively, under Rule 12(b)(6) because the alleged conduct falls squarely within the permissible-use exception of 18 U.S.C. § 2721(b)(4).

Dated: August 21, 2026

Respectfully submitted,

By: */s/ Alyssa C. Kalisky*

Alyssa C. Kalisky, P.C. (*pro hac vice*)
Martin L. Roth, P.C., (*pro hac vice*)
**KIRKLAND & ELLIS LLP**
333 West Wolf Point Plaza
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
alyssa.kalisky@kirkland.com
martin.roth@kirkland.com

Dayron Silverio
**KIRKLAND & ELLIS LLP**
830 Brickell Plaza
Miami, FL 33131
Telephone: (305) 432-5600
Facsimile: (305) 432-5601
dayron.silverio@kirkland.com

*Counsel for GovCIO, LLC*

## LOCAL RULE 3.01(g) CERTIFICATE OF CONFERRAL

In accordance with Rule 3.01(g) of the Local Rules of the Middle District of Florida, counsel for the parties conferred via videoconference on August 20, 2026 in a good faith effort to resolve the issues raised in this motion. Plaintiffs' counsel advised that Plaintiffs oppose the relief requested herein.

*/s/ Alyssa C. Kalisky*
Alyssa C. Kalisky, P.C.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on August 21, 2026, I electronically filed the foregoing through the Middle District of Florida's CM/ECF System, which will send a notice of electronic filing to all counsel of record in this action.

*/s/ Alyssa C. Kalisky*
Alyssa C. Kalisky, P.C.