**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**CASE NO. 8:25-cv-02920-KKM-NHA**

STEVE LEVINE and JAQUELYN DEPPE,
individually and on behalf of all others
similarly situated,

Plaintiffs,

v.

MUNICIPAL PARKING SERVICES, INC.,
PREMIUM PARKING SERVICE, LLC, and
GOVCIO, LLC,

Defendants.
_____________________________________/

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT GOVCIO, LLC'S MOTION TO DISMISS COUNT III OF THE AMENDED CLASS ACTION COMPLAINT**

Plaintiffs Steve Levine and Jaquelyn Deppe ("Plaintiffs") file this Response in Opposition to Defendant GovCIO, LLC's Motion to Dismiss Count III (D.E. 65) (the "Motion"), and state:

**INTRODUCTION**

GovCIO is a private, for-profit company that monetizes its access to protected motor-vehicle information. GovCIO queries protected motor-vehicle records, retrieves the registered owner's name and home address, and transmits that information into Municipal Parking Services, Inc. ("MPS") and Premium Parking Service, LLC's ("Premium") private-parking invoicing workflow.

The Driver's Privacy Protection Act ("DPPA") forbids that access unless a statutory exception applies. Congress enacted the DPPA in 1994 after years of state DMVs freely selling drivers' personal information caused "unfortunate consequences ranging from the trivial . . . to the tragic." *Andrews v. Sirius XM Radio, Inc.*, 932 F.3d 1253, 1257 (9th Cir. 2019); *see also Maracich v. Spears*, 570 U.S. 48, 51-52 (2013). The statute bars any person from obtaining, disclosing, or using personal information from a motor vehicle record, except for fourteen narrow and enumerated permissible purposes. 18 U.S.C. §§ 2721(b), 2724(a). Those exceptions do not give GovCIO a license to sell access to protected personal information simply because MPS and Premium need it to run their mass-mailing business built on violating the DPPA.

GovCIO's standing argument rests on a legal standard the Eleventh Circuit has already rejected. GovCIO asks this Court to measure Plaintiffs' injuries against

Florida's intrusion upon seclusion tort, framing the inquiry around the privacy harms "Florida courts recognize" and faulting Plaintiffs for not alleging Florida's "private place" element. D.E. 65, pp. 16–17. That is not the analysis Article III requires. The question is whether Plaintiffs' harm bears a close relationship to one "traditionally recognized as providing a basis for lawsuits in American courts." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021).

Under the correct standard, Plaintiffs have standing. GovCIO's unauthorized obtainment of Plaintiffs' personal information from protected motor-vehicle records is itself the kind of unauthorized examination of private records that intrusion upon seclusion has long treated as actionable. The harm is complete when the unlawful access occurs, regardless of any later use. GovCIO then disclosed that information, transmitting Plaintiffs' names and/or home addresses to MPS, Premium, and downstream vendors. That is a separate privacy injury, and one the Eleventh Circuit has held likewise requires no additional consequence to be concrete. Both injuries were inflicted by GovCIO itself, and neither depends on MPS or Premium's later use of their protected personal information. Plaintiffs do not need wasted time to create standing. Their standing rests on concrete privacy injuries.

Section 2721(b)(4) likewise supplies no basis for dismissal. The Amended Complaint alleges that GovCIO profits by obtaining and disclosing protected information to support an automated billing operation: MPS and Premium mail invoices at scale, collect from recipients who pay, and do not sue or arbitrate against those who refuse. D.E. 32 ¶¶ 34, 75–78, 139–42. There is no litigation purpose

anywhere in that workflow for GovCIO to invoke. At minimum, GovCIO's asserted litigation-purpose exception raises factual issues that cannot be resolved on a motion to dismiss.

## ARGUMENT

## I. PLAINTIFFS HAVE ARTICLE III STANDING TO SUE GOVCIO

Plaintiffs allege two concrete privacy injuries, both inflicted by GovCIO itself. The Amended Complaint alleges that GovCIO used Plaintiffs' license-plate numbers to query protected motor-vehicle records and obtain their names and/or home addresses without a permissible purpose, and that GovCIO then disclosed that information to MPS, Premium, and other vendors within the private parking-enforcement workflow. D.E. 32 ¶¶ 36–38, 59–61, 66–68, 139–43. The unauthorized examination of protected records is a concrete privacy injury closely related to harm the common law has long redressed, and so is the unauthorized disclosure that followed. GovCIO's contrary argument depends on the wrong Article III comparator and improperly focuses on downstream conduct, such as the mailing of parking invoices that Plaintiffs need not trace to GovCIO to establish standing.[1]

### A. Article III looks to the historical common law, which imposes no "private place" requirement

[1] Because GovCIO's standing challenge is facial, and because GovCIO has not submitted evidence controverting Plaintiffs' jurisdictional allegations, the Court must accept the Amended Complaint's well-pleaded factual allegations as true. *Stalley v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232-33 (11th Cir. 2008).

The Article III analysis proceeds in two steps. The Court first considers Congress's judgment about the harm the statute was enacted to redress. Though not conclusive, that judgment is "instructive and important" because Congress is "well positioned to identify intangible harms that meet minimum Article III requirements." *Drazen v. Pinto*, 74 F.4th 1336, 1342 (11th Cir. 2023) (en banc). The Court then compares the statutory harm to its common-law analogue. *TransUnion*, 594 U.S. at 425-26.

*Drazen* controls that comparison in this Circuit. The question is not whether the plaintiff could plead every element of the comparator tort. The question is whether the harm caused by the statutory violation bears a close relationship to a harm traditionally regarded "as providing a basis for a lawsuit in English or American courts." *Drazen*, 74 F.4th at 1343. The comparison is "one of kind, not degree," and the new harm "need only be similar to the old harm." *Id.* at 1343-44.

GovCIO does not dispute that intrusion upon seclusion is the analogue. D.E. 65 at 17.[2] It instead imports Florida's modern "private place" limitation into the historical inquiry. The traditional common law tort, however, protects private affairs in addition to private places. Section 652B reaches intentional intrusions into another's solitude, seclusion, or "private affairs or concerns." Restatement (Second) of Torts §

[2] GovCIO devotes an earlier portion of its Motion to whether Plaintiffs' loss of control over their information resembles the tort of public disclosure of private facts, and concludes that it does not because Plaintiffs allege no publicity. D.E. 65 at 16–17. Plaintiffs do not invoke that comparator as the basis for Article III standing, and intrusion upon seclusion requires no publicity. Restatement (Second) of Torts § 652B cmt. a.

652B. Comment b explains that an intrusion may occur through investigation or examination into one's private concerns. And the harm does not depend on what the defendant later does with the information obtained: "The intrusion itself makes the defendant subject to liability, even though there is no publication or other use." *Id.* cmt. b. Comment c confirms the point. It provides that liability exists when the defendant "has intruded into a private place, ***or*** has otherwise invaded a private seclusion that the plaintiff has thrown about his person or affairs." *Id.* cmt. c (emphasis added). The Restatement is thus clear: entry into a private "place" is one form of intrusion; investigation or examination of private affairs is another.

The Eleventh Circuit has applied this precise analogue analysis to a similar statutory privacy injury in *Perry v. Cable News Network, Inc.*, 854 F.3d 1336 (11th Cir. 2017). There, the plaintiff alleged that the defendant transmitted his video-viewing history to a third-party data analytics company in violation of the Video Privacy Protection Act, another federal privacy statute that, like the DPPA, protects personal information from unauthorized disclosure or use. *Id.* at 1338-39. The Eleventh Circuit looked to § 652B and held that the alleged statutory violation conferred Article III standing because it bore a close relationship to the common-law tort of intrusion upon seclusion, without imposing any private "place" requirement.[3]

[3] Notably, *Perry* involved no intrusion into any private "place" whatsoever. The alleged privacy violation occurred electronically when the defendant's own mobile application collected the plaintiff's viewing activity and the defendant transmitted that information to a third-party analytics company. 854 F.3d at 1338–41 & n.1.

That framework explains why GovCIO's reliance on *Cicale*, *Bourdeau*, and *In re Municipal Parking Services* is misplaced.[4] Those decisions defined the analogue by reference to Florida's modern statement of intrusion upon seclusion and, because Florida requires an intrusion into a physical or electronic "place," rejected standing because DMV records are not a private "place" under Florida law.[5] They did not address the Restatement, English common law, or the broader common law tradition which contains no such "place" requirement.[6] That is not the inquiry *Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016), *TransUnion*, or *Drazen* requires. *See Holmes v. Elephant Ins. Co.*, 156 F.4th 413, 423 n.8 (4th Cir. 2025) ("*TransUnion* does not ask for an analogue recognized in the specific jurisdiction whose laws are being applied. It only asks for an analogue 'traditionally recognized' in history or at common law in general."); *Bohnak v. Marsh & McLennan Cos.*, 79 F.4th 276, 286 (2d Cir. 2023) ("[I]t matters not whether

---

[4] GovCIO's reliance on *Watts v. City of Hollywood, Fla.*, 146 F. Supp. 3d 1254, 1267 (S.D. Fla. 2015) is further misplaced because it analyzed whether the plaintiff stated a claim under Florida's narrow intrusion upon seclusion tort and involved no standing analysis whatsoever.

[5] *See Cicale v. Pro. Parking Mgmt. Corp.*, 832 F. Supp. 3d 1331, 1336 (S.D. Fla. May 1, 2026) ("Under Florida law, establishing invasion of privacy requires a physical or electronic intrusion 'into a place . . .'"); *Bourdeau v. Pro. Parking Mgmt. Corp.*, No. 25-60390-CIV, 2026 U.S. Dist. LEXIS 35232 (S.D. Fla. Feb. 20, 2026) (same); *In re Municipal Parking Services*, No. 3:24-cv-320, 2025 WL 1475794 (N.D. Fla. Feb. 12, 2025) (same).

[6] Florida's tort iteration is irrelevant for Article III standing purposes because it is narrower than the historical common law tradition outlined in § 652B of the Restatement. *See Oppenheim v. I.C. System, Inc.*, 695 F. Supp. 2d 1303, 1309 n.2 (M.D. Fla. 2010) (explaining that "§ 652B has not been adopted in Florida" and that Florida's private place requirement "is significantly narrower" than § 652B's protection against intrusion upon "the solitude or seclusion of another or his private affairs or concerns").

[the forum state's] common law recognizes a tort relating to" the harm at issue; "what matters is that the intangible harm . . . bears a relationship to an injury with a close historical or common-law analogue.").

*Stegmeyer* makes a related error by rejecting the analogue because the alleged intrusion was not sufficiently "highly offensive" to establish the tort itself. *See Stegmeyer v. ABM Industries Inc.*, No. 24-CV-00394, 2026 WL 879588, at *5 (N.D. Ill. Mar. 30, 2026). But *Drazen* does not require Plaintiffs to plead every element, or the same degree of offensiveness, required by the comparator tort. It asks whether the statutory harm is similar in kind to the traditional common-law harm. *Drazen*, 74 F.4th at 1343-44.

GovCIO's related assertion that motor vehicle records are not "private" conflates constitutional privacy protection with the common-law protection of private affairs. GovCIO's principal authority, *Corbitt v. Sec'y of the Ala. Law Enf't Agency*, 115 F.4th 1335, 1350–51 (11th Cir. 2024), addressed whether a state policy violated the plaintiffs' constitutional right to informational privacy. The plaintiffs therefore had to establish a constitutionally protected privacy interest in the information at issue. *Id.* at 1350–51. *Letourneau v. City of Pembroke Pines*, No. 17-CV-60082, 2017 WL 9362841, at *5 (S.D. Fla. Apr. 4, 2017) likewise involved a § 1983 claim for violation of the plaintiffs' Fourth and Fourteenth Amendment rights, which required them to establish a constitutionally protected expectation of privacy in their motor-vehicle information. Both turned on a narrow threshold: the constitutional right to privacy reaches only "intimate personal information given to a state official in confidence." *Id.* Neither court considered whether the unauthorized examination of those records by private

actors resembles a harm traditionally actionable at common law. Each asked only whether the information was intimate enough to constrain the government.

Plaintiffs here assert no constitutional privacy claim against any government actor. They allege that GovCIO, a private company, obtained and disclosed their protected information for a purpose the DPPA forbids, causing harm closely related to a common-law intrusion into private affairs. The Article III comparison does not require Plaintiffs to establish a viable constitutional claim against the government.

The absence of a constitutional privacy claim against the government (a claim not at issue in this case) does not make Plaintiffs' DMV information freely available to the public. A person cannot walk into a DMV and ask who owns a particular license plate and where that person lives. That information, which Plaintiffs were required to give the State as a condition of registering a vehicle, is not published, and it is not available to anyone who asks for it. Congress restricted its release to fourteen enumerated purposes, 18 U.S.C. §§ 2721(a)–(b), 2725(3). And Florida law expressly declares that personal information in the records of its Department of Highway Safety and Motor Vehicles "is confidential pursuant to" the DPPA and "may be released only as authorized by that act." Fla. Stat. § 119.0712(2)(b).[7]

**B. GovCIO's unauthorized obtainment of Plaintiffs' protected information is itself a concrete privacy injury**

[7] Georgia law provides the same protection. *See* Ga. Code § 40-2-130 (c) (providing that "motor vehicle registration records . . . are exempt from the provisions of any law of this state requiring that such records be open for public inspection").

Under the correct standard, Plaintiffs have standing. The DPPA makes it unlawful to "obtain" personal information from a motor vehicle record for an impermissible purpose, independent of any later disclosure or use. 18 U.S.C. § 2724(a) (creating liability for any person who knowingly "obtains, discloses or uses personal information, from a motor vehicle record," for an impermissible purpose). That is no accident. Congress drew that line because drivers and vehicle owners must provide personal information to the State to obtain a license or register a vehicle; they do not provide it so private entities can access it for purposes incompatible with the reason the State collected it. *See Reno v. Condon*, 528 U.S. 141, 143 (2000) (explaining that state DMVs require drivers and vehicle owners to provide personal information to obtain licenses and vehicle registrations); 140 Cong. Rec. H2522 (daily ed. Apr. 20, 1994) (statement of Rep. Moran) (explaining that the DPPA sought to "give[] drivers the ability to restrict release of personal information for reasons that are . . . incompatible [with] the reasons it was collected" by the state).

***(1) The common law has long treated unauthorized examination of private records as an actionable intrusion***

GovCIO did not obtain Plaintiffs' information from Plaintiffs. It used Plaintiffs' license plate numbers to obtain protected motor-vehicle-record information and identify and locate them, without a permissible purpose under the DPPA. D.E. 32 ¶¶ 41-43, 56, 75. That is not a bare statutory technicality. It is the very privacy injury Congress sought to prevent in enacting the DPPA, and it is the kind of harm the common-law tort of intrusion upon seclusion has long redressed.

The Restatement defines intrusion upon seclusion to cover not only physical intrusion into a private place, but any intentional intrusion "by some other form of investigation or examination into his private concerns." Restatement (Second) of Torts § 652B & cmt. b. The illustrations include "opening his private and personal mail, searching his safe or his wallet, examining his private bank account, or compelling him by a forged court order to permit an inspection of his personal documents." *Id.* cmt. b. As explained by the Eleventh Circuit, the "'intrusion itself makes the defendant subject to liability, even though there is no publication or other use.'" *Perry*, 854 F.3d at 1341 (emphasis in original) (citation omitted).

***(2) Courts apply that principle to unauthorized access to protected records, including DMV records***

Federal courts have repeatedly applied that principle to DPPA claims and similar protected-record statutes. In *Heglund v. Aitkin County*, 871 F.3d 572 (8th Cir. 2017), the Eighth Circuit held that DPPA standing exists at the moment of unauthorized access because "[a]n individual's control of information concerning her person . . . was a cognizable interest at common law." *Id.* at 577. The court explained that the plaintiffs there were not asserting a bare procedural violation. They alleged that the defendants "violated the DPPA's substantive protections by invading [plaintiffs'] privacy," which is the kind of harm intrusion upon seclusion has long redressed. *Id.* at 578. That intangible harm "is sufficient for the [plaintiffs] to establish an injury in fact." *Id.*; *see also Berenguer v. Anoka County*, 889 F.3d 477, 482 (8th Cir. 2018) (reaffirming *Heglund*). The Fourth Circuit reached the same conclusion in *Garey*

*v. James S. Farrin, P.C.*, 35 F.4th 917 (4th Cir. 2022), holding that plaintiffs whose names and addresses were obtained from motor vehicle records for an impermissible purpose alleged a "legally cognizable privacy injury" that was "closely related to the invasion of privacy, which has long provided a basis for recovery at common law." *Id.* at 921-22.

*Potocnik v. Carlson*, No. 13-cv-2093 (PJS/HB), 2016 WL 3919950 (D. Minn. July 15, 2016), reached the same result in another DPPA case. There, the court held that a plaintiff had Article III standing based on the unlawful obtainment of her personal information from DMV records because "the type of harm at issue — the viewing of private information without lawful authority — has a close relationship to invasion of the right to privacy, a harm that has long provided a basis for tort actions in the English and American courts." *Id.* at *3. The court also rejected the same state-law-tort error GovCIO asks this Court to adopt, explaining that "*Spokeo* does not require that the harm created by the violation of a statute be identical to the type of harm that will give rise to a recovery under the common law of any particular jurisdiction." *Id.* The court therefore held that the plaintiff had "standing to pursue her claims under the DPPA, even if [she] can show nothing more than that defendants invaded her privacy by unlawfully obtaining information about her from the DVS database." *Id.*[8]

[8] Other district courts have reached the same conclusion. *See Sistrunk v. TitleMax, Inc.*, No. SA-14-CA-628, 2016 WL 9450445, at *6 (W.D. Tex. Aug. 26, 2016) ("[T]he impermissible obtaining of drivers' information is more than a mere statutory violation; it is a concrete, though intangible, injury."); *Whitaker v. Appriss, Inc.*, 229 F. Supp. 3d 809, 814-15 (N.D. Ind. 2017) (DPPA standing "begins at least at the point of

Courts have reached the same result under other statutes protecting comparable categories of personal records. In *Persinger v. Southwest Credit Systems, L.P.*, 20 F.4th 1184 (7th Cir. 2021), the Seventh Circuit held that a debt collector's unauthorized access to a consumer's credit report, with no later use of the data, was a concrete injury because the harm "resembles the harm associated with intrusion upon seclusion." *Id.* at 1193. The Ninth Circuit reached the same result in *Nayab v. Capital One Bank (USA), N.A.*, 942 F.3d 480, 491 (9th Cir. 2019), holding that unauthorized access to a consumer's credit report is "closely related to— if not the same as" the traditional intrusion upon seclusion harm, and grounding that conclusion in the same Restatement § 652B commentary on "investigation or examination into [] private concerns." The Fourth Circuit reached a similar conclusion under the Privacy Act, holding that unauthorized access to personally identifiable information held in a government database is itself an intentional intrusion into "private affairs or concerns," without any misuse or dissemination of what was viewed. *Am. Fed'n of State, Cnty. & Mun. Emps., AFL-CIO v. Soc. Sec. Admin.*, 172 F.4th 361, 368-69 (4th Cir. 2026) (en banc).

Congress's judgment reinforces that conclusion. Under *Drazen*, Congress's determination that a particular invasion of privacy inflicts cognizable harm is "instructive and important." 74 F.4th at 1342. As the Seventh Circuit explained in

---

unlawful disclosure or obtainment of the plaintiffs' personal information," because "once that occurs, the damage is already done").

*Persinger*, when Congress prohibits unauthorized access to a protected category of records, it "created a federal cause of action for a common-law-like harm" and "did not attempt to enact an injury into existence." 20 F.4th at 1193. That is exactly what Congress did with the DPPA. The statute responds to a documented pattern of privacy harms flowing from the unauthorized release of motor vehicle records. *Maracich*, 570 U.S. at 51-52.

Plaintiffs allege that injury here. GovCIO used Plaintiffs' license plate numbers to obtain protected motor-vehicle-record information that the DPPA placed off limits unless a permissible purpose applied. That conduct falls squarely within the examination branch of intrusion upon seclusion, which reaches not only physical entry into a private place but also "some other form of investigation or examination into [a person's] private concerns." Restatement (Second) of Torts § 652B & cmt. b. GovCIO's unauthorized access to Plaintiffs' protected records invaded the interest the common law has long protected: "[a]n individual's control of information concerning her person." *Heglund*, 871 F.3d at 577.[9]

As the Eleventh Circuit explained in *Perry*, the wrong is the unauthorized examination itself. 854 F.3d at 1341. Congress drew the same line in the DPPA by making the impermissible obtainment of personal information from a motor vehicle

---

[9] GovCIO's argument concerning Plaintiff Deppe conflates intrusion into a home with intrusion into private affairs. Her privacy injury arises from GovCIO's examination and disclosure of her protected information, regardless of whether or not Premium or MPS mailed her an invoice. GovCIO's request to strike the Georgia Premium Class is thus meritless.

record independently actionable, separate from any later disclosure or use. 18 U.S.C. §§ 2721(b), 2724(a). Plaintiffs' injury was concrete, particularized, and complete the instant GovCIO obtained their protected information without a permissible purpose.

This is not a case where a defendant merely failed to follow a statutory procedure collateral to an otherwise lawful transaction. Plaintiffs do not allege, for example, that GovCIO lawfully held their information but omitted a required notice, used the wrong form, or routed a lawful communication through the wrong ministerial channel. The violation here is the substantive invasion itself: GovCIO used Plaintiffs' license plate numbers to obtain protected motor-vehicle-record information, identify Plaintiffs by name, locate them, and disclose that information to MPS and Premium so they could place that information into an automated invoicing workflow without any permissible purpose. D.E. 32 ¶¶ 41-43, 56, 75, 139–42. That is the examination of private records the common law has long treated as an intrusion in its own right.

### C. GovCIO's unauthorized disclosure of Plaintiffs' protected information is a separate concrete privacy injury

The DPPA separately prohibits the unauthorized "disclos[ure]" of personal information obtained from a motor vehicle record. 18 U.S.C. § 2724(a). The Amended Complaint alleges that GovCIO did not merely obtain Plaintiffs' DMV-sourced information. After obtaining it, GovCIO transmitted or made that information available to Premium, MPS, and other vendors within the private parking-enforcement workflow. D.E. 32 ¶¶ 141–42. That unauthorized disclosure is a second privacy injury attributable directly to GovCIO.

*Perry* confirms that an unauthorized disclosure of statutorily protected information is itself a concrete privacy injury. As discussed *supra*, the claim there arose from the defendant's unauthorized transmission of statutorily protected viewing information to a third-party analytics company. 854 F.3d at 1338–39. The Eleventh Circuit held that the "wrongful disclosure" itself was a concrete privacy injury because it bore a close relationship to harms recognized at common law; the plaintiff did not need to allege any additional consequence from the disclosure. *Id.* at 1340–41 & n.1.

The same reasoning applies here. Like the VPPA, the DPPA protects a defined category of personal information and separately prohibits its unauthorized disclosure. *Compare* 18 U.S.C. § 2724(a), *with* 18 U.S.C. § 2710(b). And like the defendant in *Perry*, GovCIO disclosed statutorily protected personal information to third parties without authorization. D.E. 32 ¶¶ 141–42. Plaintiffs therefore do not need to show that GovCIO itself mailed an invoice or caused some additional downstream harm. The disclosure itself is a concrete privacy injury.

GovCIO invokes *Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*, 48 F.4th 1236, 1249 (11th Cir. 2022) for the proposition that transmitting protected information to a vendor cannot be concrete absent "publicity." D.E. 65, pp. 16–17. But the plaintiff there pleaded his harm as the exposure of embarrassing information about his debt to another set of eyes—a harm whose only common-law counterpart is public disclosure of private facts, for which publicity is an essential element. *Hunstein*, 48 F.4th at 1243–48. Plaintiffs plead no such harm here. Their injury is the unauthorized disclosure of protected personal records GovCIO had no right to obtain, which is the same kind of

injury *Perry* measured against intrusion upon seclusion—a tort under which "the intrusion itself makes the defendant subject to liability, even though there is no publication or other use of any kind." Restatement (Second) of Torts § 652B cmt. b; *Perry*, 854 F.3d at 1341.

**D. Plaintiffs' Privacy Injuries Are Directly Traceable to GovCIO**

GovCIO argues that Plaintiffs' injuries are not traceable to GovCIO because it did not capture their license plates, determine the parking charges, draft or mail the invoices, or threaten booting or towing. D.E. 65, pp. 7–10. That argument focuses on the wrong injuries. Plaintiffs' standing against GovCIO does not depend on the later mailing of invoices. Rather, the privacy injuries described above arose from GovCIO's own obtainment and disclosure of Plaintiffs' protected information, before any invoice was mailed.[10] *See* D.E. 32 ¶¶ 139–42.

Indeed, GovCIO's description of itself as a "backend data lookup" provider that "performed lookup services" confirms the causal connection. D.E. 65, pp. 2, 9. The impermissible lookup caused the obtainment injury, and the impermissible transmission caused the disclosure injury. No intervening actor or attenuated causal chain separates GovCIO's conduct from either injury.

---

[10] GovCIO's group-pleading argument ignores these allegations. The Amended Complaint identifies GovCIO by name and alleges its own conduct: obtaining Plaintiffs' DMV-sourced personal information, processing it, and disclosing it to Premium, MPS, and other vendors. D.E. 32 ¶¶ 139–42.

GovCIO's authorities involved materially different circumstances. In *Walters v. Fast AC, LLC*, 60 F.4th 642 (11th Cir. 2023), a contractor concealed a lender's loan documents from the plaintiff, and the plaintiff later sued the lender under the TILA for defects in its disclosures. The court rejected that standing theory against the lender because the plaintiff never saw the documents during financing and because better disclosures would have changed nothing. *Id.* at 650–52. In *Baughcum v. Jackson*, 92 F.4th 1024 (11th Cir. 2024), individuals barred from obtaining gun licenses because of their age sued Georgia's Commissioner of Public Safety, who designed the application form. The court found no standing against the Commissioner because the statutory age restriction, independently applied by state judges, prevented the plaintiffs from obtaining licenses. *Id.* at 1032-33. The Commissioner's form did not cause the plaintiffs' alleged injuries. *Id.* at 1033–34. In both *Walters* and *Baughcum*, the courts rejected the standing theories because the challenged conduct did not cause the asserted injuries. Here, by contrast, GovCIO inflicted the privacy injuries itself by obtaining and disclosing Plaintiffs' protected information without a permissible purpose, regardless of whether anyone later mailed an invoice or threatened Plaintiffs.

## II. THE AMENDED COMPLAINT ALLEGES THAT GOVCIO OBTAINED AND DISCLOSED PLAINTIFFS' INFORMATION FOR A PURPOSE NOT PERMITTED BY § 2721(b)(4)

GovCIO invokes only one DPPA permissible-use exception: § 2721(b)(4)'s narrow litigation exception, which covers use "in connection with" litigation, including "investigation in anticipation of litigation." 18 U.S.C. § 2721(b)(4). The Amended Complaint identifies GovCIO's purpose as supplying personal information

for MPS and Premium's automated private-invoicing operation—not for any case-specific investigation in anticipation of litigation. The Amended Complaint therefore alleges facts that negate the litigation exception GovCIO invokes.

### A. *Maracich* requires a narrow reading of § 2721(b)(4) and a predominant litigation purpose

Section 2721(b)(4) permits personal information from a motor vehicle record to be disclosed "[f]or use in connection with any civil, criminal, administrative, or arbitral proceeding . . . including . . . investigation in anticipation of litigation." 18 U.S.C. § 2721(b)(4). GovCIO reads that exception to encompass its lookups merely because the collection process could theoretically produce a civil proceeding, arguing that § 2721(b)(4) "does not require litigation be the sole or even primary anticipated outcome—only that the use relate to that possibility." D.E. 65, p. 25.

*Maracich* rejected such an expansive reading. There, the Supreme Court explained that extending the exception to any use remotely related to a potential legal dispute would undermine the DPPA's protection of personal information. 570 U.S. at 59–60. Instead, the exceptions must be "read . . . narrowly in order to preserve the primary operation" of the statute. *Id.* at 60. A theoretical connection to possible litigation therefore does not end the inquiry. Under *Maracich*, the question is whether the ***predominant purpose*** of obtaining or using the motor-vehicle-record information was litigation or case-specific investigation in anticipation of litigation. Where the predominant purpose is commercial, as in *Maracich* itself, the exception does not apply merely because litigation is possible. *Id.* at 71-72. GovCIO's assertion that an unpaid

parking charge could theoretically lead to litigation does not establish that its lookups were undertaken predominantly for litigation or investigation in anticipation of litigation. The possibility of a later lawsuit does not establish the purpose of the earlier access.

The investigation clause confirms that limitation. *Maracich* explains that the clause "is best understood to allow background research to determine whether there is a supportable theory for a complaint, a theory sufficient to avoid sanctions for filing a frivolous lawsuit, or to locate witnesses for deposition or trial testimony." *Id.* at 63-64.[11] The Court also treated the scale and structure of a mass-mailing campaign as evidence of commercial purpose: the attorney-defendants' mailings there were not in anticipation of litigation where they "cast a wide net, sending letters to over 30,000 car purchasers." *Id.* at 63.

**B. The Amended Complaint alleges no litigation purpose anywhere in the challenged workflow**

The Amended Complaint describes an automated invoicing process and identifies GovCIO's role within it. GovCIO obtains registered-owner information using captured license-plate numbers, then processes and transmits that information to Premium, MPS, and other vendors to support private parking invoicing. D.E. 32 ¶¶

[11] GovCIO selectively quotes *Maracich* as permitting the obtainment of protected information to contact "'persons . . . who are necessary parties' to litigation." D.E. 65, p. 23. But the immediately preceding sentence limits that example to steps ensuring "the integrity and efficiency of an ***existing or imminent legal proceeding***." *Maracich*, 570 U.S. at 63 (emphasis added). The Amended Complaint alleges no such proceeding—only an automated billing process in which no litigation is contemplated.

36–38, 139–42. The purpose is to identify people to bill, locate their addresses, and supply the information needed to generate and collect private parking invoices at scale.[12] *Id.* ¶¶ 61, 76, 78.

The Amended Complaint supports that purpose with concrete operational facts. The Amended Complaint alleges a fully automated operation built on sending invoices in bulk and collecting from the subset of recipients who pay, without pursuing litigation against those who do not. Indeed, the Amended Complaint alleges that lookups occur when the system flags a vehicle for an alleged parking charge, "not when an attorney, legal department, or other decision-maker determines that a lawsuit, arbitration, or other legal proceeding should be investigated or pursued." *Id.* ¶ 75. No attorney reviews the plate capture, lookup, or invoice beforehand, and no case-specific legal evaluation precedes the lookup. *Id.* ¶ 77. The invoices threaten booting and towing rather than litigation, identify no contemplated proceeding, and state that the charges are not subject to civil or criminal penalties. *Id.* ¶¶ 32, 74, 80. Premium and MPS do not file civil actions or arbitrations to collect these charges. *Id.* ¶ 34. Together, these allegations support the inference that GovCIO supplies information for routine billing without any contemplated litigation purpose.

---

[12] *Young v. W. Publ'g Corp.*, 724 F. Supp. 2d 1268, 1271–72 (S.D. Fla. 2010) does not alter that conclusion. It permits a reseller to redisclose DMV information only when the recipient has a permissible purpose under § 2721(b); it does not convert an impermissible downstream use into a permissible one. Here, the downstream use was automated billing and collection, not litigation.

GovCIO nonetheless argues that Premium and MPS must identify registered owners to determine "whether further collection proceedings are necessary." D.E. 65, p. 23. But the Amended Complaint alleges a completely automated process: a flagged parking charge triggers a lookup and invoice without any case-specific decision to investigate or pursue litigation. D.E. 32 ¶¶ 75–78. The system generates invoices at scale, and Premium and MPS do not litigate these charges when recipients refuse to pay. *Id.* ¶¶ 34, 60, 81. Those allegations describe routine billing. GovCIO's contrary characterization inserts a litigation assessment into a process alleged to contain none.

GovCIO next asserts that, without motor vehicle records, Premium and MPS "would have no way to identify potential defendants or recover unpaid fees." D.E. 65, p. 23. Calling invoice recipients "potential defendants" does not transform billing into litigation investigation. Nor does the operators' dependence on DMV access make that access permissible. The Amended Complaint alleges that Premium and MPS could collect payment at entry or exit. D.E. 32 ¶ 33. Instead, they chose an operation built on obtaining registered owners' information in violation of the DPPA, mailing invoices in bulk, and collecting from the subset of recipients who pay, without pursuing litigation against those who do not. *Id.* ¶¶ 34, 75–78. That choice explains their commercial demand for GovCIO's services. It does not, however, supply a § 2721(b)(4) litigation purpose for the information GovCIO obtains and discloses. Premium and MPS cannot create a right to protected DMV information by building their business around unlawfully obtaining it. Nor can GovCIO use the litigation

exception to profit from supplying that information when no litigation is contemplated.

### C. GovCIO's authorities do not transform routine billing into investigation in anticipation of litigation

GovCIO's "actual use is not required" cases do not decide the issue here. Plaintiffs do not argue that § 2721(b)(4) applies only when litigation is ultimately filed or when the information is actually used in court. The issue is the purpose of the access when it occurred. Under *Maracich*, a theoretical future lawsuit does not bring access to protected information within § 2721(b)(4) if the predominant purpose is commercial billing rather than litigation or case-specific investigation in anticipation of litigation. 570 U.S. at 66-72.

GovCIO's pre-*Maracich* authorities do not address that question because none applies the Supreme Court's predominant-purpose analysis.[13] Nor do they support dismissal on their own terms. For example, in *Taylor v. Acxiom Corp.*, 612 F.3d 325, 337 (5th Cir. 2010), a merchant obtained DMV records in bulk to verify identifying information customers supplied when paying by check (a use § 2721(b)(3) expressly authorizes) and the court held that never consulting most of those records did not defeat that purpose. Unlike in *Taylor*, the question here is whether GovCIO's access

---

[13] GovCIO cites a post-*Maracich* case, *In re Mun. Parking Servs.*, 2025 WL 1475794, for the proposition that a purpose need only relate "in some way to pending or anticipated litigation." D.E. 65, p. 25. That reading is inconsistent with *Maracich*, 570 U.S. at 59–61. And in any event, the court there declined to dismiss under § 2721(b)(4) where the complaint alleged, as the Amended Complaint alleges here, that MPS does not litigate the charges. *In re Mun. Parking Servs.*, 2025 WL 1475794, at *8.

falls within § 2721(b)(4). It does not. *See Santiago-Duran v. Vanguard Parking Sols., Inc.*, 764 F. Supp. 3d 1203, 1211 (S.D. Fla. 2025).

*City of Tallahassee v. Federated Publications, Inc.*, No. 4:11-cv-395-RH/CAS, 2012 WL 5407280 (N.D. Fla. Aug. 9, 2012), similarly fails to support GovCIO's private-invoicing theory. It involved a municipal government enforcing a public ordinance through a formal administrative process backed by the power of the state. *Id.* at *1-2. The court applied § 2721(b)(4) because the red-light notice "initiate[d] a process" that was itself "an administrative proceeding" and could ripen into a traffic citation and court proceedings if unpaid. *Id.* at *2. The invoices here begin nothing. They are "not filed with any court or processed by any governmental agency," and when recipients do not pay, Premium and MPS do not pursue civil actions or arbitrations. D.E. 32 ¶¶ 34, 69, 75–78. A notice that opens an enforcement proceeding supplies the connection to litigation that a private invoice does not.

*Thomas v. George, Hartz, Lundeen, Fulmer, Johnstone, King & Stevens, P.A.*, 525 F.3d 1107 (11th Cir. 2008), also does not extend § 2721(b)(4) to GovCIO's conduct. *Thomas* confirms that the exception can cover pre-suit investigations by litigants investigating potential claims. *Id.* at 1115 n.5. But Defendants are not alleged to have investigated any particular potential claims. MPS and Premium are alleged to have used an automated process that triggers GovCIO's DMV lookups in response to parking events for the purpose of mailing invoices at scale. D.E. 32 ¶¶ 60, 75-78, 81. *Maracich* prevents that kind of reframing. A commercial operation cannot borrow the

litigation label to access protected motor-vehicle records for routine billing. 570 U.S. at 71-72.

## CONCLUSION

Plaintiffs allege concrete privacy injuries. GovCIO obtained protected motor-vehicle-record information without a permissible purpose and disclosed that protected information to Premium and MPS. Those injuries are closely related to traditional privacy harms and satisfy Article III under *Drazen*.

GovCIO's § 2721(b)(4) argument cannot be resolved in its favor on a motion to dismiss. The Amended Complaint alleges automated private invoicing at scale, not any case-specific investigation in anticipation of litigation. At minimum, GovCIO's asserted permissible-purpose defense raises factual issues that cannot be resolved on the face of the Amended Complaint.

For these reasons, Plaintiffs respectfully request that the Court deny GovCIO's Motion to Dismiss. In the alternative, should the Court find any pleading defect, Plaintiffs request leave to amend pursuant to Rule 15(a)(2).

Dated: September 18, 2026

Respectfully submitted,

**MARK FERRER & HAYDEN**
80 S.W. 8th Street, Suite 1999
Miami, Florida 33130

By: s/*Charles M. Garabedian*
Charles M. Garabedian, Esq.
Florida Bar No. 1000974
Victor Sanabria, Esq.
Florida Bar No. 125292
Jonathan L. Wolloch, Esq.

Florida Bar No. 1039105
victor@mfh.law
charles@mfh.law
jonathan@mfh.law
eservice@mfh.law

**CERTIFICATE OF SERVICE**

I hereby certify that I filed the foregoing document electronically on the Court's CM/ECF docket on September 18, 2026, which served same electronically upon all counsel of record.

By: s/ *Charles M. Garabedian*